

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RAB:PT
F.#2008R01893

*271 Cadman Plaza East*

*Brooklyn, New York 11201*

October 22, 2010

By Hand and ECF

The Honorable Nina Gershon
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Ryan Gosin
           Criminal Docket No. 08-820 (NG)

Dear Judge Gershon:

    The government respectfully writes in response to the above-captioned defendant's sentencing letter dated October 15, 2010.  For the reasons stated below, the government respectfully submits that the Court should sentence the defendant within the assigned Guidelines range and impose a substantial fine.

I.    The Defendant's Criminal Conduct

    A.    Conduct Related to the Charged Mortgage Fraud Scheme

    As stated in the first paragraph of the Pre-sentence Investigation Report ("PSR"), the defendant has been convicted of money laundering conspiracy for his participation in a scheme to commit mortgage fraud which took place in 2004 and 2005.  As part of this scheme, the defendant and a co-defendant, Michael McEnroe, created a fifteen-employee real estate business, the Able Group, that engaged in various types of illegal activities.  See PSR at ¶¶ 36-53.  These activities included: recruiting straw buyers to fraudulently obtain mortgage loans (including the defendant's recruitment of his own wife), a practice that not only often led to the mortgage lenders foreclosing on the properties purchased with those mortgages, but also led to the straw buyers having their credit ratings ruined; submitting false information about the straw buyers' finances, employment and residency status to mortgage lenders; corrupting a bank branch vice president and a certified public accountant into making such false submissions in furtherance of the scheme, which included providing the bank branch vice president with cocaine; corruptly

inducing a licensed appraiser to inflate the value of the homes sold to the straw buyers; using the personal information of the straw buyers and other people, sometimes without those individuals' knowledge, to obtain credit cards and automobile leases that were used for the benefit of the defendant and McEnroe; and fraudulently inducing "investors" to provide the defendant and McEnroe with money for the ostensible purpose of expanding the Able Group business or investing in specific pieces of real estate, when in fact the defendant and McEnroe used the money for personal expenses, including trips to Florida and Las Vegas, and never repaid these "investors" in full, if at all.

   Notably, much of the proceeds of these criminal activities were spent for the benefit of the defendant alone, not his wife and children.  This is inconsistent with the defendant's claim that he committed his crime "to provide for his wife and children."  Defendant's Letter of October 15, 2010 (Def. Letter) at 5, Def. Letter Ex. 2 at 2.  Further, contrary to the defendant's minimizing his conduct as becoming "involved with the wrong people and the wrong business," Def. Letter at 8, it was the defendant who convinced many others to become criminals, as reflected in the uncontested aggravating role enhancement assigned to the defendant in the PSR.  As a result of the defendant's solicitations and instructions, four of the defendant's employees at Able (a group that does not include McEnroe) are now convicted felons.  The defendant also brought into the scheme his former accountant and a bank branch vice president.  Due to their convictions, the bank branch vice president lost her job, the accountant gave up his license as a Certified Public Accountant, and both now face sentencing by this Court.

  B. <u>Other Conduct Relevant to Sentencing</u>

   The government submits that pursuant to 18 U.S.C. § 3553(a)(1), the Court must consider the "history and characteristics of the defendant," including bad acts of the defendant that are not "relevant conduct" to the count of conviction.  Various of the defendant's acts show that the behavior related to the indictment to which he pleaded guilty is not an aberration, but rather consistent with his prior conduct: the defendant "borrowed" $20,000 from a person he had befriended and then never repaid the money; the defendant convinced the friend to file a false police report as part of an auto insurance fraud scheme; the defendant procured bogus W-2 forms in the name of Irving Salzberg as part of a scheme to fraudulently obtain commercial loans from banks; and the defendant convinced a friend to co-sign for an automobile lease, then reported the car stolen

before obtaining theft insurance, leaving the friend responsible for the lease payments. See Addendum to the PSR at 4. This behavior once again contradicts the defendant's assertion that "other than this case, he is a law abiding family man." Def. Letter at 5.

II.  The Defendant's Post-Arrest Behavior

The defendant was arrested on November 2008 and released on a $600,000 bond.[1] As part of the standard conditions of his pre-trial release, the defendant agreed not to commit any more crimes.[2] On December 14, 2009, the defendant admitted to the probation officer preparing the PSR that he had smoked marijuana daily since 1999; unsurprisingly, he tested positive on that date for marijuana use. Pre-trial services began regularly testing the defendant for drug use soon thereafter, and the defendant tested positive for marijuana use again in July 2010, admitting that he used it both the weekend of July 4, 2010 and the following week. This behavior, too, puts the lie to the defendant's claim that he is "law-abiding." Def. Letter at 5.

Other aspects of the defendant's behavior during the period from 2006 through the present (while the defendant was on probation in Nassau County) contradict his assertion that "other than this case" (meaning his involvement in 2004 and 2005 with the Able Group), the defendant has been "law-abiding."[3] According to the mother of a childhood friend of the defendant (the "Witness"), in late 2006 the defendant obtained from the Witness's parents (then aged 85 and 87) their social security numbers for the purpose of doing a credit check so the defendant's wife, who apparently worked in the mortgage industry at the time, could get the Witness's parents a reverse mortgage. The defendant then used the Witness's father's identity to

---

[1]  Notably, notwithstanding the defendant blaming his father's poor behavior for the defendant's problems, see Def. Letter at 7, this bond was co-signed by Howard Gosin, the defendant's father, and the defendant's stepmother, as well as the defendant's mother and one of his sisters. A house owned by the defendant's stepmother was put up to secure the bond.

[2]  During this period the defendant was also on probation for his Nassau County Grand Larceny conviction.

[3]  In the defendant's own letter to the Court, he dates his decision to "completely turn my life around," to "2005, when the state/federal trouble began." Def. Letter Ex. 1 at 1-2.

"purchase" a home then owned by the Witness's son for $640,000, including a $611,000 mortgage taken out in the Witness's father's name.  At the time, the Witness's father was 87 years old and had no income other than social security benefits.  Eventually, the mortgage holder foreclosed on the property, to the detriment of the Witness's father's credit.  Also in 2007, the defendant used the Witness's father's identity to obtain a credit card at a Lowe's home improvement store, running up a bill for $14,000.  The defendant told the Witness he would pay the bill but never did.  The defendant also used the Witness's father's identity and credit history in 2007 to lease a Jeep automobile.[4]

The Witness's account is confirmed by the defendant's own statements during a February 17, 2009 proffer session with the government, where the defendant admitted that he twice refinanced the property in question, including orchestrating a fraudulent mortgage application in the Witness's father's name.[5]  During the same proffer session the defendant admitted that he

---

[4] Andrew Cooper, Esq. has submitted a letter to the Court attesting to the defendant's good character.  Def. Letter Ex. 8.  The government notes that Cooper represented the defendant in his 2001 bankruptcy proceedings and during his Nassau County criminal case.  The government further notes that according to the Witness, the defendant recommended that she engage Cooper to provide legal services relating to an arbitration and legal malpractice claim arising out of the sale of a business owned by the Witness's family.  The Witness asserts that she paid Cooper approximately $30,000 for unsatisfactory legal services.  Separately, Cooper told the Witness that he would arrange a meeting with the defendant to work out a restitution plan regarding the losses the Witness's father suffered due to the defendant's improper use of the Witness's father's identity, but the defendant never appeared for the meeting.  Instead, Cooper told the Witness's husband that the defendant had no money.

[5] The defendant proffered with the government on December 1, 2008 and February 17, 2009.  Before each of those proffer sessions began, the defendant signed a proffer agreement permitting the government to use the statements the defendant made in the proffer session, <u>inter alia</u>, "as substantive evidence to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made, by or on behalf of [the defendant] at any stage of a criminal prosecution (including but not limited to... sentencing).  The statements the defendant made during the proffer session recounted herein directly contradict the claim he now makes that he has been "law-abiding" since 2005.

4

illegally obtained an automobile using the Witness's father's identity.

Contrary to what he would like the Court to now believe, Gosin did not "turn his life around" in 2005 when the course of conduct encompassing the count of conviction ended.

### III. The Defendant Should Pay a Substantial Fine

The defendant has posted information about himself on the internet at www.myspace.com/rmgisme. On that website, the defendant states that he makes more $250,000 per year. Notably, this figure contradicts the income figure he provided to the Probation Department of $4,500 per month. See PSR at ¶ 139. In light of his substantial income, the defendant should be required to pay a substantial fine.

### IV. Conclusion

Because of the many types of harm caused by the defendant in his leadership role in the Able Group scheme, his bad conduct unrelated to the Able Group scheme, the continuing threat he poses to the public, the defendant's continued abuse of controlled substances, and the need to deter both the defendant and others from committing similar crimes in the future, the government respectfully requests that the Court sentence the defendant to a term of incarceration within the advisory Guidelines range.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By:      /s/
Paul Tuchmann
Assistant U.S. Attorney
(718) 254-6294

cc:   Joseph Conway, Esq.(By ECF)